*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SIMONE QUANTESZ DUDLEY,

        Defendant-Appellant.

UNPUBLISHED
September 19, 2019

No. 343081
Oakland Circuit Court
LC No. 2017-262665-FH

Before: O'BRIEN, P.J., and BECKERING and LETICA, JJ.

PER CURIAM.

A jury convicted Simone Quantesz Dudley of possession with intent to deliver 50 or more but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*), and the trial court sentenced him to 10 to 20 years' imprisonment. Dudley appeals as of right. We affirm.

Dudley's conviction arises from the discovery of cocaine during the execution of a search warrant. On March 15, 2017, members of the Oakland County Narcotics Enforcement Team (NET) executed a search warrant at Perry Place, the Pontiac apartment of Dudley's 94-year-old great-grandmother, and found cocaine and narcotics-packaging materials. The detectives also located certain items bearing Dudley's name, as well as the name of his brother.[1] As officers were searching the exterior of the premises, Dudley, his brother, and another man arrived in the latter's vehicle, carrying food. After the three men began nonchalantly walking in a direction away from the apartment, detectives approached them. According to the detectives, Dudley yelled that they could not search his house without a warrant. The three men were detained and searched. The detectives seized a cell phone and approximately $700 from Dudley. Text messages subsequently extracted from Dudley's cell phone were indicative of drug activity. While jailed, Dudley made several phone calls that included references to narcotics trafficking. At trial, Dudley denied possessing the cocaine found inside his great-grandmother's apartment or

---

[1] Dudley's brother was charged as a codefendant in this matter, but entered a no-contest plea shortly before trial.

having any knowledge that drugs were stored there. The defense suggested that Dudley's brother, who was their great-grandmother's caregiver and had a key to the apartment, possessed the drugs.

## I. SUFFICIENCY OF THE EVIDENCE

Dudley first argues that the prosecution failed to present sufficient evidence to support his conviction. We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

Dudley does not dispute that this offense was committed.[2] He argues that he did not participate in the offense because he did not knowingly possess a controlled substance and there was no credible evidence that he possessed any of the drugs found in the apartment. We disagree.

Proof of physical possession is unnecessary. *People v Konrad*, 449 Mich 263, 271; 536 NW2d 517 (1995). Possession of a controlled substance may be either actual or constructive, and may be joint as well as exclusive. *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Because Dudley was not found in physical possession of the cocaine discovered during the search, the prosecution's theory at trial was that Dudley had constructive possession of the cocaine. "[C]onstructive possession exists when the totality of the circumstances indicates a sufficient nexus between the defendant and the contraband." *Id*. at 521. "[A] person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession." *Id*. at 520. "Instead, some additional connection between the defendant and the contraband must be shown." *Id*. "The essential question is whether the defendant had dominion or control over the controlled substance." *Konrad*, 449 Mich at 271. Possession can be proven by circumstantial evidence and reasonable inferences arising from the evidence, and is a factual question for the jury. *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011); *People v Fetterley*, 229 Mich App 511, 515; 583 NW2d 199 (1998).

Viewed in a light most favorable to the prosecution, the totality of the circumstances indicated a sufficient nexus between Dudley and the contraband discovered inside Perry Place.

---

[2] For a conviction of possession with intent to deliver 50 or more but less than 450 grams of cocaine, the prosecutor must prove beyond a reasonable doubt that "(1) the defendant knowingly possessed a controlled substance; (2) the defendant intended to deliver this substance to someone else; (3) the substance possessed was cocaine and the defendant knew it was cocaine; and (4) the substance was in a mixture that weighed between 50 and [450] grams." *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998).

There was evidence that in January 2017, less than three months before the search of Perry Place, NET officers searched a residence on W. Princeton, and found Dudley's state identification card, credit union documents, a medical bill, and two prescription medication bottles all bearing the Perry Place address. Dudley admitted that 8 grams of cocaine found inside W. Princeton belonged to him. Dudley was arrested following the search of W. Princeton and, in a recorded jail call, Dudley stated that he would have to build his "sh*t back up" because the longer he waited, "the more people are going to other people." Dudley was released on bond and, in March 2017, engaged in text-message exchanges indicative of narcotics trafficking.

On March 15, 2017—the day the search warrant was executed at Perry Place—Dudley arrived at the small apartment around 8:00 a.m. and had been there for two to three hours before leaving to pick up food. While in the apartment, Dudley had a text-message exchange with someone who accused him of shorting the person in a recent drug transaction. Subsequently, the police found approximately 164 grams of cocaine in the apartment. Some of the cocaine was readily visible on a desk in the living room and on the dining room table. Materials indicative of drug packaging, including baggies, a digital scale, a glassware measuring cup, and a bottle of acetone, were also out in the open. In a recorded phone call Dudley made from jail, he stated: "[D]amn I should have sat my ass down, I just turned . . . two balls into . . . close to about eight or nine that quick man." In other jail calls, Dudley discussed narcotics, including his belief that the person he "got the sh*t from" was the informant used to obtain the search warrant for Perry Place. A jury could reasonably infer from this evidence that Dudley's claim that he had no knowledge of the drugs in the apartment was not credible.

There was also evidence that enabled a jury to reasonably infer that Perry Place was Dudley's residence, or one of his residences. On the desk where cocaine was found were documents bearing Dudley's name with the Perry Place address. Cocaine was hidden in both bedroom closets and documents also bearing Dudley's name, though reflecting the W. Princeton address, were on the floor of one of the bedrooms. In the other bedroom, the great-grandmother's room, a safe contained paperwork for both Dudley and his brother, which included two receipts in Dudley's name. In the closet where the cocaine was hidden was a shoebox containing Dudley's résumé with the Perry Place address and a letter addressed to Dudley from a prisoner, discussing potential earnings from selling drugs in a prison facility. Further, as the warrant was being executed, Dudley returned to the complex and initially walked in the direction of the apartment, but after seeing the detectives, Dudley and his companions "slowly and nonchalantly just turned and walked in a different direction[.]" Significantly, when the detectives approached the three men, Dudley yelled, "Y'all need a warrant to be in my mother[]f**king house."

The reasonable inferences arising from this evidence, considered together, were sufficient to enable the jury to find beyond a reasonable doubt that Dudley, at minimum, had joint control of the contraband in the apartment. The weight and credibility of Dudley's own testimony to the contrary were matters for the jury to decide, *Wolfe*, 440 Mich at 514-515, and do not affect the sufficiency of the evidence. The same challenges Dudley raises on appeal were presented to the jury during trial. This Court will not interfere with the jury's role of determining issues of weight and credibility. *Id*. Rather, we must draw all reasonable inferences and make credibility choices in support of the jury's verdict, and that deferential standard of review "is the same

whether the evidence is direct or circumstantial." *Nowack*, 462 Mich at 400. Here, there was sufficient evidence that Dudley possessed the drugs found in the apartment.

## II. OTHER-ACTS EVIDENCE

Dudley also challenges the trial court's decision to allow the prosecutor to present evidence that he was charged in relation to two other narcotics investigations in Pontiac. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo[.]" *Bynum*, 496 Mich at 623.

"At its essence, MRE 404(b) is a rule of inclusion, allowing relevant other acts evidence as long as it is not being admitted solely to demonstrate criminal propensity." *People v Martzke*, 251 Mich App 282, 289; 651 NW2d 490 (2002); see also *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010). Although MRE 404(b)(1) prohibits "evidence of other crimes, wrongs, or acts" to prove a defendant's character or propensity to commit the charged crime, it permits such evidence for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004), quoting MRE 404(b)(1) (quotation marks omitted). Other-acts evidence is admissible under MRE 404(b)(1) if it is (1) offered for a proper purpose, i.e., one other than to prove the defendant's character or propensity to commit the crime, (2) relevant to an issue or fact of consequence at trial, MRE 401, and (3) sufficiently probative to outweigh the danger of unfair prejudice, pursuant to MRE 403. *People v Starr*, 457 Mich 490, 496-498; 577 NW2d 673 (1998); *People v VanderVliet*, 444 Mich 52, 55, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

"A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). In *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000), our Supreme Court explained that "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." See also *People v Hine*, 467 Mich 242, 251; 650 NW2d 659 (2002). The *Sabin* Court noted that "[g]eneral similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts." *Sabin*, 463 Mich at 64. "For other acts evidence to be admissible there must be such a concurrence of common features that the uncharged and charged acts are naturally explained as individual manifestations of a general plan." *Hine*, 467 Mich at 251. But "distinctive and unusual features are not required to establish the existence of a common design or plan." *Id*. at 252-253. "The evidence of uncharged acts needs only to support the inference that the defendant employed the common plan in committing the charged offense." *Id*. at 253.

## A. 2017 CONVICTION REGARDING W. PRINCETON

The prosecutor presented evidence that Dudley entered a no-contest plea with respect to another charge of possession of cocaine with intent to deliver following a search conducted by NET officers at W. Princeton on January 26, 2017. Both the January 2017 search of W. Princeton and the March 2017 search of Perry Place uncovered similar physical evidence of drug trafficking, including cocaine, baking soda, plastic baggies with the corners missing, and a digital scale. In both searches, the police seized cell phones purportedly belonging to Dudley and discovered text messages indicative of drug sales and messages exchanged with a contact named "Becky" or "Becki." During the search of W. Princeton, the police located several items bearing Dudley's name and the Perry Place address and, conversely, items referring to W. Princeton were found during the Perry Place search, thereby linking Dudley to both locations where cocaine trafficking activities were taking place. Furthermore, in a recorded jail call on January 28, 2017, Dudley made statements suggesting he intended to continue selling drugs upon his release. Given the similarity of the physical evidence discovered at both locations, the close temporal proximity of the acts, Dudley's stated intent to continue selling drugs, and his subsequent release on bond, evidence of Dudley's activities at W. Princeton was probative of a common scheme, plan, or system of possessing cocaine with intent to deliver. The fact that Dudley was engaged in a common scheme was relevant to a fact in issue because Dudley denied knowledge of the incriminating evidence recovered from Perry Place and claimed that he had no connection to that apartment.

Further, the evidence was relevant to show Dudley's intent to continue his drug business, which included his participation in drug trafficking at Perry Place in March 2017, and thus was directly relevant to the prosecution's theory of the case and correspondingly weakened Dudley's theory of the case. The prosecutor theorized that Dudley had been conducting a drug business out of W. Princeton, but after that location was raided and he was arrested in January 2017, he had to find another location after being released on bond. The prosecutor argued that Dudley simply shifted his activities to his great-grandmother's Perry Place residence. Again, Dudley not only denied possessing any of the cocaine found at Perry Place, but asserted that he had no knowledge that drugs were in the apartment or that any drug trafficking activities were occurring there. Accordingly, the evidence of Dudley's prior conduct was relevant to the prosecutor's theory that Dudley was not merely present at his great-grandmother's apartment on March 15. The evidence provided context for the jury to understand why Dudley's presence at his great-grandmother's residence—where cocaine, drug-packaging materials, and documents bearing Dudley's name were found—could have been part of his ongoing drug business and, thus, assisted in establishing that Dudley had constructive possession of the cocaine found there.

Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Mardlin*, 487 Mich at 616. MRE 403 is not, however, intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Instead, under the balancing test of MRE 403, a court must first decide if the prior bad-acts evidence was unfairly prejudicial, and then " 'weigh the probativeness or relevance of the evidence' against the unfair prejudice" to determine whether any prejudicial effect substantially outweighed the probative value of the evidence. *Cameron*, 291 Mich App 611-612 (citation omitted). Unfair prejudice exists where there is "a danger that marginally

probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Mills*, 450 Mich at 75-76; *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002). The unfair prejudice language "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App 611 (quotation marks and citations omitted).

We are not persuaded that the jury would have been unable to rationally weigh the evidence and consider it for its proper purpose. The record discloses that the prosecutor focused on the proper purpose for which the evidence was admissible. Moreover, the trial court gave a cautionary instruction to the jury concerning the proper use of the evidence, thereby limiting any potential for unfair prejudice. *Sabin*, 463 Mich at 56. It is well established that jurors are presumed to have followed their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). Accordingly, there was no error in allowing the other-acts evidence concerning the January 2017 search of W. Princeton.

## B. 2006 CONVICTION REGARDING FISHER STREET

The prosecutor also presented evidence of an earlier plea-based conviction of possession of a controlled substance with intent to deliver arising from a search warrant executed on May 16, 2006, on Fisher Street, where Dudley's great-grandmother was then residing. The trial court determined that the evidence was admissible to demonstrate a common scheme, knowledge, intent, and absence of mistake. We disagree. In stark contrast to the evidence concerning Dudley's activities at W. Princeton, there were few similarities between the evidence discovered at Fisher Street and the evidence at issue in this case. Dudley, his brother, and several others were at the Fisher Street residence when NET officers executed a search warrant and discovered fentanyl packaged as heroin. Although several packets of fentanyl were bundled together in "corner ties," the fentanyl was primarily packaged in packets made from folded up lottery tickets. Apart from the obvious fact that Dudley and his brother were implicated in drug trafficking taking place, at least in part, at their great-grandmother's home, we discern no common features between Dudley's 2006 possession of fentanyl and the charges at issue in this case, and thus no basis for concluding that the proffered evidence was probative of a common plan or scheme. Nor could this evidence be admitted to demonstrate Dudley's knowledge, intent, or absence of mistake because the only manner in which Dudley's unrelated 2006 activities were probative of those issues would be through the forbidden intermediate inference of bad character or propensity. See *People v Crawford*, 458 Mich 376, 396-397; 582 NW2d 785 (1998). Consequently, the trial court abused its discretion by admitting evidence of Dudley's 2006 conviction under MRE 404(b)(1).

"When we find error in the admission of evidence, a preserved nonconstitutional error 'is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict.'" *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017) (citations omitted). Our harmless-error analysis considers "the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999) (quotation marks and citation omitted). As discussed in Part I of this opinion, the prosecutor

presented substantial evidence of Dudley's guilt. The vast majority of this evidence was untainted by the improperly admitted other-acts evidence concerning Dudley's 2006 conviction. It is beyond dispute that police officers recovered over 164 grams of cocaine from Perry Place, along with processing and packaging materials that were indicative of intent to sell. Text messages recovered from a cell phone seized from Dudley during the search also suggested that Dudley was engaged in drug trafficking. Further, less than two months before the March 15, 2017 search of Perry Place, Dudley made statements in a recorded jail call suggesting that he intended to continue selling drugs. Although Dudley denied knowledge of, or involvement in, the activities that were taking place at Perry Place, circumstantial evidence—including various documents bearing Dudley's name and the Perry Place address, personal items purportedly belonging to Dudley that were found in the apartment, Dudley's abandoned attempt to return to the apartment while the search was underway, and his subsequent assertion that the police needed a warrant "to be in [his] mother[]f**king house"—tied Dudley to the apartment and the contraband found therein. Considering the weight of the untainted evidence presented by the prosecutor, Dudley cannot demonstrate a probability that the improper admission of other-acts evidence was outcome-determinative.

## III. DUDLEY'S STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, Dudley raises additional issues of ineffective assistance of counsel and sufficiency of the evidence. We conclude that Dudley is not entitled to a new trial on the basis of these issues.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Because Dudley failed to raise an ineffective assistance of counsel claim before the trial court in a motion for a new trial or request for an evidentiary hearing, our review of this issue is limited to mistakes apparent on the record.[3] *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

### 1. FAILURE TO OBJECT TO OFFICER JANCZAREK'S TESTIMONY

During trial, the prosecutor called Oakland County Sheriff's Deputy Charles Janczarek to testify concerning the execution of a search warrant at Fisher Street on May 16, 2006. Officer

---

[3] Although Dudley filed a pro se motion with this Court requesting a remand for the purpose of conducting an evidentiary hearing, we denied his motion for failure to persuade the Court of the necessity for a remand. *People v Dudley*, unpublished order of the Court of Appeals, entered November 26, 2018 (Docket No. 343081).

Janczarek testified that Dudley and his brother were present at the residence, and that 62 packs of fentanyl, packaged as heroin, were recovered, along with narcotics-packaging materials. Dudley now argues that defense counsel should have objected to the following testimony elicited from the Officer Janczarek in response to the prosecutor's inquiry about how he was able to remember the incident more than 10 years later. The officer explained:

> [I]t was the largest Fentanyl seizure in Oakland County up to that point. So it was sixty-two packs of Fentanyl and I remember us sitting around thinking that this Fentanyl had been packaged for use as heroin, how many overdoses, how many deaths would have occurred from that. And the [Drug Enforcement Administration] actually took note of it and came up and did some investigation furthering that.

Generally, all relevant evidence is admissible unless otherwise prohibited by the rules of evidence or the state or federal constitutions. MRE 402; *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. However, even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403.

We agree that defense counsel's failure to object to the officer's testimony about "how many overdoses, how many deaths would have occurred" from Dudley's conduct in 2006 could be considered objectively unreasonable. Preliminarily, there was no need for the prosecutor to present facts to support Officer Janczarek's memory of the 2006 incident, because there was no dispute about what was recovered from the search and whether Dudley was in possession of the controlled substance. Further, even if evidence supporting the officer's memory could be deemed marginally relevant, his opinion about "how many overdoses, how many deaths would have occurred" was likely unfairly prejudicial given its potential for injecting extraneous considerations like bias, anger, or shock. *Cameron*, 291 Mich App at 611.

However, to the extent that defense counsel's failure to object to this evidence was objectively unreasonable, Dudley has not demonstrated that he was prejudiced by counsel's performance. There is not a reasonable probability that, but for counsel's inaction, the result of the trial would have been different. To the contrary, considering the weight of the evidence discussed earlier in this opinion, no reasonable likelihood exists that the jury would have reached a different verdict but for defense counsel's inaction. We also note that through the prosecutor's questioning of Dudley at trial, the prosecutor appeared to acknowledge that Dudley believed that the substance was heroin, and not the more dangerous fentanyl. Moreover, the prosecutor did not argue to the jury that it should use evidence regarding the danger of fentanyl to conclude that Dudley was guilty of the charged crime.

In sum, to the extent that defense counsel's failure to object was objectively unreasonable, given the evidence presented at trial and the fact that the prosecutor did not encourage the jury to use the testimony at issue for an improper purpose, there is no reasonable probability that the testimony affected the outcome of the trial. Therefore, Dudley has not demonstrated that he was prejudiced by defense counsel's inaction.

## 2. FAILURE TO INVESTIGATE AND IMPEACH OFFICER JANCZAREK

Dudley also argues that defense counsel was ineffective for not impeaching Officer Janczarek's credibility in this case with evidence from an unrelated 2017 case, in which a circuit court found that the officer's testimony regarding whether a search warrant was properly signed was not credible. Decisions about what evidence to present, including the impeachment of witnesses, are matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citation omitted). "Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id*. (quotation marks and citation omitted.)

Considering the facts of this case, defense counsel's failure to introduce this evidence at trial was not objectively unreasonable. Officer Janczarek's testimony was limited to the 2006 other-acts evidence, and Dudley corroborated the detective's testimony concerning that search. During his own testimony, Dudley testified that the police executed a search warrant in 2006, and that he and his brother were in the residence. Dudley admitted that he was in possession of what appeared to be heroin at that time, and pleaded no contest to possession with intent to deliver heroin. Thus, there was no reason for counsel to have believed that questioning the detective's credibility, using the proffered evidence or otherwise, would have made a difference in the outcome of trial. And, again, as discussed in Part II(B) of this opinion, the prosecutor presented ample evidence, independent of the 2006 other-acts evidence and Officer Janczarek's testimony regarding the same, from which the jury could have determined Dudley's guilt. Thus, it is improbable that defense counsel's failure to impeach Officer Janczarek in the manner urged by Dudley affected the outcome of the trial. Consequently, Dudley's ineffective-assistance claim cannot succeed.

## B. SUFFICIENCY OF THE EVIDENCE

## 1. MOTION FOR A DIRECTED VERDICT

When a defendant challenges a trial court's ruling on a motion for a directed verdict, "this Court reviews the record de novo to determine whether the evidence, viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt." *People v Parker*, 288 Mich App 500, 504; 795 NW2d 596 (2010).

In this issue, Dudley makes essentially the same sufficiency argument that is addressed in Part I of this opinion. As Dudley observes in his brief, "[t]he motion was denied as the trial court determined the evidence was sufficient to establish Defendant Dudley possessed the control over the residence along with knowledge to have constructive possession." As previously discussed, although Dudley was not in physical possession of the cocaine, the prosecution presented sufficient circumstantial evidence to establish that Dudley had constructive possession of the cocaine found at the Perry Place apartment. Accordingly, the trial court did not err in denying Dudley's motion for a directed verdict of acquittal.

## 2. INVALIDITY OF THE SEARCH WARRANT

Within this issue, Dudley argues that the search warrant was invalid because the supporting affidavit did not establish the informant's reliability.[4]  To properly preserve an issue for appeal, a defendant must timely object in the trial court, even if the right asserted is constitutional in nature.  *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006).  Because Dudley did not preserve this issue, our review is limited to plain error affecting Dudley's substantial rights.  *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999).

A search warrant may only be issued upon a showing of probable cause.  US Const, Am IV; Const 1963, art 1, § 11; MCL 780.651(1).  "Probable cause sufficient to support issuing a search warrant exists when all the facts and circumstances would lead a reasonable person to believe that the evidence of a crime or the contraband sought is in the place requested to be searched."  *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001) (quotation marks and citation omitted).  The magistrate's findings of probable cause must be based on the facts related within the affidavit.  MCL 780.653; *Ulman*, 244 Mich App at 509.  When an informant is unnamed within an affidavit, MCL 780.653(b) provides that the affidavit must contain "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable."  In addition, a "warrant may issue on probable cause if the police have conducted an independent investigation to confirm the accuracy and reliability of the information regardless of the knowledge and reliability of the source."  *People v Waclawski*, 286 Mich App 634, 699; 780 NW2d 321 (2009) (quotation marks and citation omitted).  The affiant "must state the matters that justify the drawing of inferences," and "the affiant's experience is relevant to the establishment of probable cause."  *Id*. at 698.

The affidavit was authored by Detective Daniel Main, a 19-year police veteran, who averred that he has been involved in more than 6,000 controlled substance investigations.  Detective Main averred that the informant had agreed to provide information to the Oakland County Sheriff's Office in dangerous drug and other criminal investigations, and that the informant had "never furnished any false or misleading information during the time that [Detective Main] has known the informant."  Detective Main stated that the informant's information had consistently been "true and accurate" and had been "confirmed through various sources and investigative processes."  In addition, over the course of 3½ years, the informant had purchased narcotics more than 20 times and "provided information that has led to the initiation of several additional criminal investigations."  Thus, by citing past involvement in police investigations, including drug trafficking and involvement with the police over the course of years, Detective Main provided specific details about the informant's reliability.

---

[4] Although we choose to briefly address the merits of Dudley's argument regarding the validity of the search warrant, we note that it does not fall within the scope of his statement of the questions presented for review and is not properly before this Court.  MCR 7.212(C)(5); *People v Miller*, 238 Mich App 168, 172; 604 NW2d 781 (1999).

Further, Detective Main had been conducting an investigation of the activity at Perry Place. The informant identified Dudley by his nickname, "Mone," and reported that Mone had been selling and making deliveries of cocaine from Perry Place. Detective Main could confirm Dudley's identity by his nickname. Detective Main arranged two controlled drug purchases using the informant within one month before requesting the search warrant, the last being within 48 hours of the request. The informant immediately turned over the purchased substance after leaving the Perry Place apartment, and the substance field-tested positive for cocaine. Given this information, the affidavit clearly contained "affirmative allegations" that show that the informant "spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b). Consequently, Dudley's belated challenge to the search warrant lacks merit.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Anica Letica